Arguing for the appellant is William Lemp. Arguing for the appellee is David Nelson. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. I'm sorry I didn't hear that. Oh I'm sorry. I'm sorry there was a request that I consent to record the proceedings. I misunderstood. Quite all right. How are you gentlemen this morning? Good judge. Thank you. I think Mr. Lemp are you ready to proceed? I am. Then go right ahead. May it please the court. Mr. Nelson my name is William Lemp. I represent Amarin in this case. As referenced in my brief and pursuant to the Stockton decision referenced in my brief both decisions from the commission are currently before this court. Um and it is submitted that despite the long procedural history and in fact we're here for the second time before this court um that this is actually a relatively simple matter. If this court should find as it did previously that the initial decision from the Illinois Workers' Compensation Commission was not against manifest weight of the evidence it is submitted that all else is moot. The initial decision from the commission was unanimous in that the petitioner failed to sustain his burden of proof in establishing compensability. And also please keep in mind that the initial decision from the commission is the only independent decision and non-directed decision from the commission and it is still before this court. Mr. Nelson argues for an independent review of the facts and in my view basically asked this it is submitted that's exactly what Judge Katz did. She submitted she substituted her judgment for the decision from the Illinois Workers' Compensation Commission. It is long established in case law and in practice that there's deference to the commission in terms of findings of fact. In my practice um and none of you have met me before we've not had the pleasure of having a case together but I've been trying cases in Illinois for 35 years. I don't know how many cases I've tried maybe 50, 75. I've only been before the appellate court three or four times and there's a reason for that because in the practice and pursuant to directors from this court there's deference given to the commission in findings of fact such as is a case here. As submitted that's where this should end. The initial decision from the commission should be controlling and also keep in mind those are solid basis for that decision. There is lots of evidence in support of the fact that petitioner failed to sustain his burden of proof. He misled Dr. Tudor at the beginning. He said he didn't have any history of asthma or asthma-like symptoms. He misled arbitrator Lee in terms of saying he didn't have any previous asthma or asthma-like symptoms. In fact as referenced by Dr. Roth there was a decade for asthma symptoms including four days before the initial exposure. As referenced by Dr. Harris and as supported in the hospital records and medical records the petitioner returned to baseline very shortly after both exposures. There was surveillance at the time when petitioner said he couldn't work he couldn't be subject to smoke or other alleged triggers that there was surveillance that in fact was. So there is a lot of evidence to support the decision from the commission that this is not a compensable scenario. And but again despite my citing that there's lots of evidence it is submitted it is not your job or your role to retry the case that's that's been done. It's your role as you mentioned in your previous decision to determine whether the initial decision from the commission was against the manifest weight of the evidence. Isn't that exactly what Judge Katz did? Well I'm I'm not quite sure what Judge Katz did the basis for her opinion um but again this court has had numerous times that it's not Judge Katz's decision to which there should be deference it's the decision from the Illinois Workers' Compensation Commission. And please note that nothing has changed in terms of the evidence since this matter was initially before you. The only thing that has changed is that there's been a remanded the commission subsequently complied with the remand in their subsequent decision they addressed properly pursuant to the remand the nature and extent of the disability but they did not again review evidence as to causation. In terms of causation issues nothing has changed since the initial decision. Counsel isn't it is it correct to say also that there is a substantial amount of evidence that this the employer employee did not have asthma before this event? I would submit uh I would have a difference of opinion with you because there are statements in the records with mention of asthma asthma-like symptoms specific medications that are consistent with asthma. So there is substantial evidence that there was a pre-existing asthmatic condition as referenced by Dr. Hires as referenced in the records from Dr. Roth. There's significant evidence even if there's a question whether it's specifically diagnosed it's referenced there are symptoms and medications consistent with it prior to these injuries. And in fact the initial decision from this court is quite insightful I reviewed that prior to this oral argument and those issues were directed in that initial decision and there was a sound reasoning in fact I noted in reviewing your original decision that it's 24 pages and this court went through all those findings and found in fact that there was significant evidence of a prior asthmatic or pulmonary condition and that there was good evidence to support Dr. Myers opinions that the petitioner returned a baseline after both of these exposures. And in fact in the initial decision from this court there was a discussion as to why Dr. Tudor's opinion should not be viewed with credibility because when petitioner initially saw Dr. Tudor and Dr. Tudor's initial conclusions were premised on the fact that there was not even not just no prior asthma but no prior symptoms consistent with any pulmonary condition. Dr. Myers did not have any prior conditions or symptoms clearly he did and this court in the in your initial decision went through that as to the basis why Dr. Myers opinion should be viewed with more credibility than Dr. Tudor. As to Mr. Nelson's argument in his brief that the sole question is the April 22 2022 decision and whether that's against the manifest weight of the evidence that is not the sole question before this court. It is submitted that is not even the primary question before this court. The primary question before this court is whether the original non-directed and independent decision of the Illinois Workers Compensation Commission was against the manifest weight of the evidence. In his brief Mr. Nelson talked about scientific evidence but that's not in the record and in fact on page three of his brief he mentions benzene as being a carcinogen that's not in the evidence that should not be considered it should be disregarded if not sanctioned that's not in the evidence there is no evidence that petitioner had any type of condition associated with benzene exposure that's not in evidence Dr. Tudor didn't even testify to that so any such statements along those lines I submit should be disregarded. And in his argument Mr. Nelson basically in my view is attempting to retry the case before this court again that's the role of the arbitrator that's the role of the commission and it is submitted that there's ample evidence in the underlying award and in fact in his brief Mr. Nelson made reference to the remodeling arguments of Dr. Tudor. Dr. Tudor admitted that was speculative that he couldn't establish that this court addressed that specific argument in its initial decision and basis why that should not be followed or why that that that testimony would not be compelling. In his brief Mr. Nelson talks about the subsequent decision from the commission and why that should trump all other matters. It is submitted that that's not the standard it's it's somewhat of a sleight of hand because by making that argument Mr. Nelson is saying that the trial didn't matter that that arbitrator Lee's determination as to credibility as to review of the evidence didn't matter that the initial decision from the commission which was unanimous in refuting compensability didn't matter that the initial determination by this court after a thorough review of the evidence evidence doesn't matter. It is submitted that the initial decision of June 26 2019 does matter and in fact that's the crucial determination in the primary consideration for this court and again at the risk of repetition please note that nothing has changed in terms of the evidence since June 26 2019. There was no attempt on remand to introduce additional evidence uh there there was no evidence so the same underlying facts that were before you initially before this court initially are still there nothing in that regard has changed so in conclusion it is submitted that there is ample evidence in the record for the initial commission decision refuting compensability certainly that decision was not against the manifest weight of the evidence and this court previously so helped I at this point I'm concluded with my primary argument and I'll wait for the rebuttal well thank you counsel uh before we move on to Mr. Nelson Justice McKinney or Justice Moore do you have any questions no no thank you obviously Mr. Lemp you'll have your opportunity for rebuttal uh Mr. Nelson go right ahead thank you sir may it please the court counsel good morning seven years ago when the treating pulmonologist from Washington University School of Medicine a professor and treater at Barnes Hospital was asked in your opinion does the petitioner have asthma and before I asked that question judge and before I gave him a chance to answer I I interrupted and I said and does it even matter so maybe I flatter myself by saying that was prescient because even now um in 2023 we're having conversations about asthma it's the central question in this case his answer was and I think this is important it's subtle I asked that question because on the one hand of course I was aware that the family doctor's notes family doctor's medical records that's Dr. Raw had the word asthma printed several times and I'd even you know I know how many times nine nine out of 32 times in the 15 calendar years that word asthma appears if sometimes only to say there's no problem with the asthma or a total of 50 medical interactions some of them being by telephone nine of them mention asthma but never once does the petitioner the patient of Dr. Roth go to Dr. Roth and say I'm here for my asthma never does he say I just had a terrible asthma attack on the other hand I'm going back and forth I I was well aware that he had been prescribed as is detailed in the record albuterol and advair which are medications used to treat people who have asthma if also people who have upper respiratory problems I counted those as well and cross-examined the independent medical examiner Dr. Hyers about it this petitioner was prescribed albuterol a total of four times before the first exposure twice in 2003 once in 2004 and a final time by the way in 2009 he was prescribed advair twice in 05 and 06 but each time he was prescribed those medications it was in connection with something like rhinitis bronchitis sinusitis he had pneumonia twice so I thought the question important to ask of the doctor I was aware as you now are aware that well at the time of the first exposure the petitioner had sleep apnea he was on one of those sleep apnea machines it's the mask that covers your mouth at night he had been prescribed that device he was seeing a pulmonologist a pulmonologist who had not diagnosed him with asthma so the question was sincere when I asked it of Dr. Tudor did he have asthma or not and maybe typical of an academic he gave the answer that was sort of long-winded over the course of the deposition he talked about actually himself convening a conference of doctors in which the very subject of what is asthma what are the components of the he went on to talk about this concept of chart lore when a diagnosis shows up when a statement shows up in a doctor record but because of the way records are capped and that includes the use of computers to keep track well a statement accurately or accurate or not can repeat and it's the nature of the record keeping system but the key thing to take away from the question of asthma when I asked it of Dr. Tudor was that he responded in a kind of conditional way he responded if he had asthma then one would say to a reasonable degree of medical certainty the asthma he experienced prior to 2013 was severely exacerbated and worsened by this exposure and that this was an irreversible phenomenon and that this exposure initiated a clinical state rendered him totally and permanently disabled that was a question we got to after the doctor had testified directly about whether the chemical to which the petitioner had been exposed actually caused injury and this is a sort of special instance in exposure cases it's not unique but rare because we know the doctor knew when he testified what petitioner had been exposed to because the chemicals had been tested and the presence of those specific chemicals was in a report that the doctor had when he testified so Dr. Tudor knew what the petitioner was exposed to when he was exposed how long he was exposed and the immediate effects of the exposure because the petitioner went straight to the emergency room after having the symptoms described there chest tightness coughing difficulty breathing and so forth I did press because it came up an argument a moment ago I want to tell you that I did press the doctor on the specifics about that at his deposition I asked him page 29 of his deposition do you have some data in your records that tells you what was in that gaseous substance that he was exposed to and is there anything that you read in the from that data that was inconsistent with the exposure triggering the injury you described and Dr. Tudor replied well the analysis showed a variety of solvents including benzene and some mercury containing material these are all low low molecular weight inorganic chemicals that are known to initiate the condition so in this case as Mr. Lemp has described for you there there is plenty of expert testimony that's very well informed they're finding a direct relationship between the exposure and the injury it's just that in this case and despite the fact of the key admission that the exposures did trigger a pulmonary reaction that's clear Dr. Hyers this responded admits yeah absolutely there were there were reactions but in in the eyes of the arbitrator the fact of those exposures actually causing anything more than a temporary or a transient problem was outweighed by the evidence that the asthma the asthma that pre-existed the first exposure was the actual cause of his condition of being unable to work again a fact that's not disputed by the time as this court is aware by the time of the actual hearing Mr. Duncan was on oxygen he appeared having had to take albuterol five times at the commission facility that morning he was prescribed immediately after the exposures Advair and albuterol both because those are bronchodilators and he was not he was not he was taking them every four hours the former and the latter twice a day it was not as before a grand total a grand total of six instances of being prescribed over the prior 15 calendar years and you know every one of those lasts a month we're talking he he had been prescribed these bronchodilators always in conjunction with an underlying condition like rhinitis for only 3.3 percent of the time after the exposures he's using it constantly so the arbitrator was convinced that it was the asthma because his debilitating condition but i but absent from that decision is is is evidence that perfectly threads the needle evidence that shows that in the natural progression of what was alleged to be adult onset asthma that blossomed that adult onset asthma blossomed into something absolutely debilitating for this petitioner at precisely the same time exactly in the window of time when the petitioner suffered these two exposures exposures that it's conceded caused him immediate and significant problems as evidence by objective testing objective testing by spirometry we have records of those tests that are in your record from 2014 to 2017 and they show just how bad objectively his lung functioning is and we don't precisely have an earlier spirometry result of pre-exposure that's 10 days or one month or a year before but we do have that spirometry report from Dr. West that's in the record that's discussed and that's from 1999 where he was having troubles cardiopulmonary troubles that were new medicine and that took care of the problem but back then there was a concern in 99 well does he have a pulmonary problem does he have a cardio it says heart bad he was given a spirometry test among other pulmonology pulmonology testing and at that time in 99 it not the spirometry results are reported as barely mild obstruction at that time and there was absolutely no follow-up with Dr. West by the way I had the petitioner testify to this on the stand and the records of Dr. West like the records of Dr. Dotaker they are in the records they are contained or embedded in the records of Dr. Roth all of which Dr. Tudor had at the time that Dr. Tudor gave his testimony and it is it is the fact of the long discussion with Dr. Tudor on the record about the instances of asthma appearing inside the Roth records and the significance of it that makes so puzzling the arbitrator and commission conclusion that quote Dr. Tudor did not have the records from Dr. Roth nevertheless he disputed any diagnosis of asthma it's it's just not true the deposition testimony has all this dialogue about Roth records and the significance of asthma so again very puzzling that the commission decision should say it's not disputed that petitioner had a significant condition of asthma so I may continue to finish the thought your honor that that question of asthma it was front and center disputed the entire time and I can't look at this court and say I believe he had asthma because I don't believe he had asthma but as an attorney representing this petitioner I did put on evidence in case you were to find that he had asthma evidence of aggravation and then of course the chain of events theory that's discussed in length thank you for letting me finish my thought and I'm I'm going to end with a record that most gently could be described as dense very dense and I I know it takes a long time to go through but I have a lot of things in my head right now if I can answer questions for the panel I'm eager to well justice Moore justice McKinney do you have any questions for Mr. Nelson no questions no questions well thank you Mr. Nelson uh Mr. Lent go right ahead with your rebuttal submit that Mr. Nelson's statements during his argument support my argument and he he mentioned and it's in the record and justice McKinney this goes to your questions you posed to me that there were multiple statements of asthma prior to either one of these exposures multiple statements of asthma and in terms of Dr. Tudor his opinion in accord with the medical records his initial opinion was premised on the fact that there was no prior asthma or any similar symptoms yeah so I just want to make clear what's the procedural posture of this case the commission decided in favor of the employer is that correct correct and the circuit court reversed as against the manifest weight of the evidence is that correct correct and uh that is a very high burden to overcome so we're basically diving into the minutiae uh of whether or not it's against the manifest way is that another is that a proper summation of what this case is really about yes okay thank you counsel and and that's my point this court is diving into the minutiae of the case arbitrarily did that the commission did that all the evidence was considered and the matter was denied Mr. Nelson his argument tries to retry the case that's not the role of this court is to retry the case the role of this court is to determine whether the initial decision from the commission was against the manifest weight of the evidence and despite the numerous statements from Mr. Nelson there was ample evidence in the record to refute compensability including the fact claimant was deemed to be less than credible because he didn't admit to the previous conditions either at trial or at the initial consultation with Dr. Tudor Dr. Tudor's opinions are flawed Mr. Nelson stated that Dr. Tudor talked about chemicals that are known to cause certain conditions if you read that line of questioning carefully he did not state he did not state that in this case that happened that question wasn't asked and it wasn't answered and and again when Mr. Nelson says these exposures were irreversible that's not true and it's it's not true not just based on the testimony from Dr. Hires and the admissions from Dr. Tudor on cross-examination it's true by the independent medical records after the initial exposure petitioner only missed a couple days of work work for many months until what was the secondary exposure arguably the less significant exposure but after the initial exposure after the subsequent exposure the treatment confirmed that within days petitioner was back to baseline these were temporary flare-ups and Mr. Nelson stating they were irreversible is not what the evidence shows the objective evidence shows that there were temporary flare-ups petitioner had a significant decade-long more than decade-long history of asthma or asthmatic symptoms for which he was taking the same medications he's taking now um so to suggest that somehow petitioner did not have pre-existing asthma I think misses the target because the evidence is that he did the evidence from Dr. Hires is that he did he had pre-existing asthma Dr. Tudor went off on some academic um statements but not on this case when Dr. Tudor initially saw the petitioner the petitioner denied any previous symptoms consistent with asthma Dr. Tudor's initial opinion supporting causation is therefore flawed it's true that he had those records at the time of his deposition but not at the time he rendered his opinion there was a basis for Rep. Tudor Lee and for the commission to deem in this situation Dr. Hires to have increased credibility because he did have all the records and then again again I can't stress enough that the independent records beyond the experts the independent records show that both of these exposures were transient again the initial decision from the commission as to causation there was ample evidence it's certainly not against the manifest weight of the evidence and I would ask that this court reinstate its initial decision along those lines thank you for your time if there's any questions I'll be glad to ask answer them justice more justice mckinney do you have any final questions no no well counsel thank you so much excuse me obviously we'll take the matter under advisement we will issue an order in due course um this actually concludes our oral argument portion of today's proceeding so this court will stand in recess until tomorrow morning at nine o'clock gentlemen we hope you have a great day